In re Jonathan MOSLEY, Debtor.

Jonathan MOSLEY, Plaintiff,

v.

MERITOR MORTGAGE CORPORA-
TION–EAST and Fidelity
Bank, Defendants.

Bankruptcy No. 87–02561S.
Adv. No. 87–0886S.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 21, 1988.

Jana Lyn Weisman, Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiff.

Edward Sparkman, Philadelphia, Pa., Trustee.

Gary McCafferty, Philadelphia, Pa., for defendants.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant adversarial proceeding presents, on its surface, a rather commonplace sort of matter: a Chapter 13 debtor challenging the Proof of Claim of his mortgage company on the grounds that (1) The Mortgagee sought to impose unwarranted attorney's fees and costs arising out of a pre-petition foreclosure suit; and (2) The

Mortgagee is subject to recoupment due to violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "TILA"), in the disclosure statement given to the Debtor by the Mortgagee's assignor in the mortgage-loan transaction. However, the nature of one of the mortgagee's defense to the TILA claim, i.e., that the Debtor's non-debtor, co-obligor wife is an indispensable party, is a troublesome issue, requiring extended treatment. Also, the Debtor's challenge of the fees and costs on the ground that the Mortgagee failed to dispatch notice prior to the commencement of foreclosure in full compliance with 41 P.S. § 403(c) of Act No. 6 of 1974, 41 P.S. § 101, et seq. (hereinafter referred to as "Act 6"), requires us to give extended treatment to that section of the Act for the first time.

We ultimately hold that the Debtor is not obliged to join his spouse in this proceeding and that he is entitled to the recoupment penalty. We also hold that the Debtor's allegations of violations of Act 6 are meritorious, thus justifying the striking of the Mortgagee's disputed requests for attorney's fees and costs. Consequently, we shall grant the Debtor's motion for summary judgment and deny the cross-motion of the Mortgagee as to both of the issues in question.

## B. PROCEDURAL HISTORY

The Debtor filed the underlying individual Chapter 13 bankruptcy case on May 26, 1987. Pending at that time was a mortgage foreclosure action brought in state court by FIDELITY BANK, one of the defendants in this proceeding,[1] seeking to foreclose on a mortgage dated January 27, 1977, against the Debtor and his wife, Norma L. Mosley. An Answer had been filed on behalf of both mortgagors in state court, contending the Fidelity had violated the TILA; Act 6; Act 91 of 1983, the

Homeowners Emergency Mortgage Assistance Act, 35 P.S. § 1680.401c (hereinafter referred to as "Act 91");[2] and the Unfair Trade Practices and Consumer Protection Law, Pennsylvania's law regulation for unfair or deceptive acts or practices, 73 P.S. § 201-1, et seq. (hereinafter referred to as "UDAP"). This foreclosure action had not been adjudicated as of the date that it was stayed by the Debtor's bankruptcy filing.

On August 31, 1987, Meritor filed a secured Proof of Claim in this case, designating arrears in the amount of $3,663.10 and total unpaid principal of $7,697.03. The itemized components of the arrears included "legal fees & costs" of $1,355.20 arising from the state court foreclosure action.

The instant adversary complaint, attacking this Proof of Claim, was filed on October 16, 1987. The principal thrust of the complaint was a contention that, since the Act 6 notice dispatched to the Debtor and his wife was defective, the state court lacked jurisdiction over the foreclosure complaint and, hence, that all of the fees and costs charged in accordance therewith were uncollectible. Also averred were violations of TILA in the mortgage documents and a failure to dispatch the notice required by Act 91, which in turn purportedly gave rise to UDAP claims.

On October 30, 1987, the Mortgagee answered, denying the substantive allegations and also pleading, as affirmative defense, that Norma L. Mosley was an indispensable party and that granting relief as to Ms. Mosley, a non-debtor, would improperly impact upon the Mortgagee's state law rights.

On January 20, 1988, the matter was listed for trial before us. The parties thereupon agreed that the matter would be submitted on a Stipulation of Facts which they would file on or before February 3,

---

**1.** The Debtor named two defendants in this proceeding, MERITOR MORTGAGE CORPORATION EAST (hereinafter referred to as "Meritor"), which he averred may have been the present assignee of the mortgage, as well as FIDELITY BANK (hereinafter referred to as "Fidelity"). The Defendants, in a joint answer, stated that Meritor was merely servicing the

mortgage for Fidelity. We have and shall hereinafter refer to the both Defendants collectively as "the Mortgagee."

**2.** A description of the program provided by Act 91 is included in our Opinion in *In re Watts,* 76 B.R. 390, 393–94 (Bankr.E.D.Pa.1987).

1988, and Briefs to be filed by February 24, 1988, and March 9, 1988, respectively, which we incorporated into an Order of January 20, 1988. The parties filed Cross-motions for Summary Judgment with their Briefs. The Debtor was granted a brief extension, and all of the initial submissions were not filed until March 28, 1988.

Upon review of the Stipulation of Facts and Briefs, we became aware of certain issues raised by the proceeding which the parties had not addressed in sufficient detail in their Briefs.[3] We therefore issued an Order of March 29, 1988, directing the parties to file Supplemental Briefs addressing the following issues, on or before April 8, 1988:

a. Is Norma Mosley an indispensable party? *See In re Parker*, 80 B.R. 729, 732–33 (Bankr.E.D.Pa.1987); and *In re Dinkins*, 79 B.R. 253, 257–58 (Bankr.E.D.Pa.1987).

b. If she is an indispensable party, what should the proper response be? Can/should the Debtor/Plaintiff amend the Complaint to add her as a party and should this matter be dismissed if he cannot or will not do so? *See Dinkins, supra.*

c. Did either of the Defendants in this proceeding obtain a pre-petition foreclosure judgment against the Debtor? Is this significant? *See Werts v. FNMA*, 48 B.R. 980, 985 (E.D.Pa. 1985).

d. Do the parties agree that the Defendant's entire claim for attorney's fees and costs in the amount of $1,155.20 rises or falls with the Debtor's contentions that Act No. 6 or Act No. 91 was violated?

e. If the parties do not agree per the foregoing paragraph d, do either of the parties desire a hearing on the issue of the legitimacy of charges imposed?

f. If the parties do not agree per paragraph d and both parties answer the question in the foregoing paragraph e negatively, which party should prevail? *See In re Lewis*, 80 B.R. 39, 40–41 (Bankr.E.D.Pa.1987); and *In re Nickleberry*, 76 B.R. 413, 418 n. 3, 420–23 (Bankr.E.D.Pa.1987).

Several of the issues were resolved in the supplemental briefing by agreement. The parties concurred that there had been no pre-petition state court foreclosure judgment and that the Mortgagee's entire claim for attorney's fees and costs should rise or fall with the determination of whether Act 6 had been violated. Neither party desired a hearing, rendering the last question moot.

Since the facts are undisputed, and the parties have presented the case to us for dispositions on cross-motions for summary judgment, we need make no factual findings—and shall prepare our decision in the narrative format. *See In re Campfire Shop, Inc.*, 71 B.R. 521, 524–25 (Bankr.E.D. Pa.1987).

## C. NORMA L. MOSLEY IS NOT AN INDISPENSABLE PARTY

The issue of whether Norma L. Mosley is an indispensable party and, if she is, what consequences should follow therefrom, was a hotly-disputed topic in the supplemental briefing. We noted the potential difficulties presented by this issue in a similar factual setting in *Parker, supra*, 80 B.R. at 732–33. There, we suggested that the argument that a spouse and co-obligor of a debtor were indispensable parties may have been deemed meritorious had it been raised in the Answer rather than having been neglected by the Mortgagee until briefing, but we dismissed this defense on the ground that it had been waived because it was not raised in the pleadings or at trial. See Bankruptcy Rule ("Bankr.R.") 7012, and Federal Rule of Civil Procedure ("F.R. Civ.P.") 12(h). Here, the Mortgagee prop-

---

3. Certain issues were resolved in the initial briefing, however. First, it became clear that the Mortgagee had dispatched the Act 91 notice, and hence the claims under that Act and UDAP were abandoned by the Debtor. Secondly, the Mortgagee agreed to reduce its attorney's fee request in apparent conformity with *In re Nickleberry*, 76 B.R. 413, 420–23 (Bankr.E.D.Pa. 1987), and sought only $1,155.20 for attorney's fees and costs.

erly pleaded this issue in its Answer, and we are compelled to confront the merits of the issue.

Pertinent to this resolution is careful consideration of B.Rule 7019, incorporating F.R.Civ.P. 19(a), which reads as follows:

> Rule 19. Joinder of Persons Needed for Just Adjudication
>
> (a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

We believe that F.R.Civ.P. 19(a) can best be conceptualized as articulating three bases for dismissal, from the vantage point of the three parties potentially affected thereby, as follows: (1) 19(a)(1)—the party asserting the cause of action, i.e., the Debtor here; (2) 19(a)(2)(i)—the absent party, i.e., here, Mrs. Mosley; and (3) 19(a)(2)(ii)—the party opposing the action, i.e., the Mortgagee here. We also believe that the proper initial response to a meritorious F.R.Civ.P. 19 motion is to direct the party asserting the cause of action to add the omitted party in an amended pleading rather than dismissing the action. *See Field v. Volkswagenwerk, AG,* 626 F.2d 293, 300 (3d Cir.

1980); *In re Direct Satellite Communications, Inc., Dechert, Price & Rhoads v. Direct Satellite Communications, Inc.,* 86 B.R. 390, 391–92 (Bankr.E.D.Pa.1988); and *Dinkins, supra,* 79 B.R. at 256–57.

Because the Mortgagee is the party making the motion, we are most sensitive to its objections based on F.R.Civ.P. 19(a)(2)(ii), since these are contentions that *it* will be harmed by the omission of the absent party. *Compare Dinkins, supra,* 79 B.R. at 257–58. Concomitantly, we would be somewhat suspicious of contentions by the Mortgagee that relate solely to purported adverse consequences to the Debtor or Mrs. Mosley arising from the absence of Ms. Mosley in this proceeding. *Compare In re Fleet,* 76 B.R. 1001, 1010 (Bankr.E.D.Pa. 1987); and cases cited therein (courts are justifiably cynical about objections of a party opposing a class action who contends that the class representative is unable to adequately represent the class).

In considering whether the requirement of F.R.Civ.P. 19(a)(1) is met, we note that this section of the Rule is concerned only to the completeness of the relief "between the persons already parties, and not as between a party and the absent party whose joinder is sought." 3A J. MOORE, FEDERAL PRACTICE, ¶ 19.07–1[1], at 19–96 (2d ed. 1987). *See also Field, supra,* 626 F.2d at 301. Further, the application of this section of the Rule is limited to a situation where " 'the court would be obliged to grant "hollow" or partial rather than complete relief to the parties before the court.' " 3A J. MOORE, *supra,* at 19–93 (quoting the Advisory Committee Note to F.R.Civ.P. 19), or where, in the absence of the allegedly indispensable party, "the court would be unable to fashion an effective decree." *Field, supra,* 626 F.2d at 301.

█ It is important to note, at the outset, that the pre–1980 version of the TILA is applicable to this action, since it involves a mortgage executed on January 27, 1977. *See, e.g., In re Ashhurst,* 80 B.R. 49, 49 n. 1 (Bankr.E.D.Pa.1987). Under that version

of the law, pre-dating the amendment to 15 U.S.C. § 1640(d) which provides that "[w]hen there are multiple obligors ..., there shall be no more than one recovery" of statutory damages, each obligor in a consumer credit transaction was entitled to a separate recovery. *See, e.g., Gambale v. Lomas & Nettleton Co.*, 80 B.R. 308, 310–11 (E.D.Pa.1987) (KATZ, J.); *Lee v. Fidelity Consumer Discount Co.*, C.A. No. 79–2160, slip op. at 17–18 (E.D.Pa. June 15, 1981), *reconsideration denied* (E.D.Pa. Dec. 30, 1983) (DITTER, J.); *Griggs v. Provident Consumer Discount Co.*, 503 F.Supp. 246, 251 (E.D.Pa.1980) (LORD, CH. J.), *appeal dismissed after remand*, 699 F.2d 642 (3d Cir.1983); *Cadmus v. Commercial Credit Plan, Inc.*, 437 F.Supp. 1018, 1021–22 (D.Del.1977) (STAPLETON, J.); *In re Dangler*, 75 B.R. 931, 934–35 (Bankr.E.D.Pa.1987); and *In re Johnson–Allen*, 67 B.R. 968, 974 (Bankr.E.D.Pa. 1986). Therefore, the Debtor and his wife, given the date of this transaction, each have a separate claim against the Mortgagee. It is therefore clear that this court can provide complete relief to the Debtor as to the Mortgagee in this proceeding, whether his wife is included as a party or not. Thus, F.R.Civ.P. 19(a)(1) is not implicated here.

The consideration articulated by F.R.Civ. P. 19(a)(2)(i) focuses upon the interests of Ms. Mosley which could be unfairly impacted adversely by a decision here. Clearly, she would not be bound to any decision here by res judicata, since she is not a party. *See, e.g., United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir. 1984); and *In re Laubach*, 77 B.R. 483, 485 (Bankr.E.D.Pa.1987). However, the Debtor's claims against the Mortgagee presents the same issues as any claims she would have, and she therefore may be bound by the result here through application of collateral estoppel. *See, e.g., Haize v. Hanover Insurance Co.*, 536 F.2d 576, 579 (3d Cir.1976); and *In re Gaebler*, 83 B.R. 264, 17 B.C.D. 225, 228 (Bankr.E.D.Pa.1988).

■ Furthermore, it is not necessary that the absent person be bound by the judgment in the action from which it is omitted in order to render F.R.Civ.P. 19(a)(2)(i) applicable. 3A J. MOORE, *supra*, ¶ 19.07[2.–1], at 19–103. Rather we must consider whether the absent party's interests will be effectively represented by the present parties, or whether the absent party may protect her rights by exercising an opportunity to intervene in the action. *See* 3A. MOORE, *supra*, at 19–104 at 19–108. Only if the absent parties are not protected should F.R.Civ.P. 19(a)(2)(i) be found applicable.

We have every reason to believe that the Debtor will adequately represent Mrs. Mosley's interests. Both were represented by the same counsel in the state court proceedings, and it is apparently for merely strategic reasons agreed upon among her husband, her, and their counsel which has caused her not to join in this bankruptcy case. There is no impediment to her intervening in this proceeding to protect her interests. We therefore perceive no basis for concluding that Mrs. Mosley must be joined in this proceeding pursuant to F.R. Civ.P. 19(a)(2)(i).

Finally, we must consider the most important element, prejudice to the Mortgagee arising from Mrs. Mosley's omission, per F.R.Civ.P. 19(a)(2)(ii). As we pointed out in *Dinkins*, 79 B.R. at 257, the general rule is that, where only one of several parties with a joint claim brings suit, the opposing party is entitled to have the other parties to the joint claim present, in order to preclude the risk of multiple liability being imposed upon the party opposing the joint claimants. *See Harris v. Balk*, 198 U.S. 215, 226–27, 25 S.Ct. 625, 628, 49 L.Ed. 1023 (1905); *Gregory v. Stetson*, 133 U.S. 579, 586, 10 S.Ct. 422, 424, 33 L.Ed. 792 (1890); and 3A J. MOORE, *supra*, ¶ 19.07[2.–0], at 19–99; and ¶ 19.07[2.–2], at 19–111 to 19–112.

It is this consideration which we believe could make the Standing Chapter 13 Trustee, Edward Sparkman, Esquire, an indispensable party. The Trustee, succeeding to the Debtor's rights, could conceivably reiterate the same claims as those asserted by the Debtor here after this litigation is completed, thus subjecting the Mortgagee

to the risk of multiple litigation or liability. Thus, if the issue were properly raised under F.R.Civ.P. 19(a)(2)(ii), he should be joined. *See, e.g., Vreugdenhil v. Hoekstra,* 773 F.2d 213, 215 (8th Cir.1985); *Steyhr Daimler Puch of America Corp. v. Pappas,* 35 B.R. 1001, 1004 (E.D.Va.1983); *Baker v. Data Dynamics, Inc.,* 561 F.Supp. 1161, 1165 (W.D.N.C.1983); and *Dinkins, supra,* 79 B.R. at 258. The Mortgagee, we think rightly, states that the Trustee "would agree to be joined and bound by the result." However, in its Answer to the Complaint, the Mortgagee did not plead that the Trustee is an indispensible party and hence this issue, as in *Parker, supra,* see page 945 *supra,* has been waived.

However, with respect to Mrs. Mosley, we fail to see how, in a case involving a pre–1980 obligation, where her right of recovery is separate from that of her husband, the Mortgagee could be subject to multiple or additional liability as a result of her absence. If she were joined, the Mortgagee would be subject to a double statutory penalty. Since she is not, only one recovery is possible. Especially since the merits of the TILA claim are so obviously clear, *see* pages 949–951 *infra,* the only practical effect of the absence of Mrs. Mosley upon the rights of the Mortgagee to allow the Mortgagee to avoid otherwise-certain multiple liability. We do not see how this result effects unfair prejudice upon the Mortgagee. Therefore, we shall decline to direct Mrs. Mosley's joinder in this action.

This decision raises a legitimate question as to how this issue would play out in two slightly different scenarios, *e.g.:* (1) The Debtor had chosen to add his non-debtor wife as a party to this proceeding, in order to attempt to garner a recoupment penalty for both from the Mortgagee; or (2) This proceeding involved a post–1980 amendment obligation, a subject concerning which we raised a query in *Parker, supra,* 80 B.R. at 732 n. 4. While any statements here relating to these hypothetical scenarios are purely dicta, we think that addressing them here will be helpful in providing guidance to the parties and other litigants

in our court in the future, and we shall do so.

We believe that two considerations provide the answers to the correct resolution of this indispensable-party problem in these scenarios. First, as the Mortgagee points out, the debtor's only claim in a bankruptcy setting is usually, as here, in the nature of recoupment against a Proof of Claim filed against the debtor personally. Non-debtors cannot seek recoupment against their obligees in bankruptcy, because there is no proof of claim filed against a non-debtor against which to recoup. Rarely, if ever, will a bankruptcy court undertake to determine the rights of non-debtors which are not or, by nature of a bankruptcy court's disposition, are no longer, related to the bankruptcy case. *Cf. In re Gurst,* 79 B.R. 969, 980 (Bankr.E.D.Pa.1987) (removed proceeding remanded to state court after debtor was dismissed therefrom); and *In re Futura Industries, Inc.,* 69 B.R. 831, 835–86 (Bankr.E.D.Pa.1987) (proceeding involving only non-debtors was remanded to the state court as an unrelated matter).

However, there is no reason why a non-debtor cannot be a party to an adversary proceeding in a bankruptcy court in which the debtor remains a party, and therein have the non-debtor's rights vis-a-vis the debtor and other interested parties determined. In fact, it frequently happens that cases are removed to the bankruptcy court because but one party is a debtor, and it is desired that the debtor's rights, vis-a-vis multiple non-debtor parties, be resolved in a bankruptcy court.

We therefore believe that the Debtor could have joined his wife as a party plaintiff in this proceeding, but this would have been a virtually useless act, because all that we would have been inclined to have done would have been to determine her purely theoretical rights against the Mortgagee had she been a debtor. Since she is not a debtor, there is no actual claim against which she could recoup; we would only be faced with a determination of her rights if she *became* a debtor. However, since her recovery would be independent from any recovery by her husband, there

would be no prejudice to any party to this action if she were not joined and her rights were left undetermined.

These conclusions do not hold in a matter involving a post–1980 amendment obligation. There, a serious question would arise regarding the allocation of the single recovery allowable under 15 U.S.C. § 1640(d) between the debtor-obligor and non-debtor obligor(s). A full recovery by one obligor would eliminate any future recovery by co-obligor(s). The obligee should therefore be able to demand that both obligors be joined in one proceeding in order that its rights, as to all obligors, can be decided once and for all. Therefore, in this scenario, we would direct that a party situated like Mrs. Mosley be joined, as a party plaintiff, and we would insist that she and her husband agree to a binding allocation of the statutory damages due to them jointly, or we would proceed to adjudicate same.

## D. THE DEBTOR'S TILA CLAIM IS MERITORIOUS

■ Having resolved the foregoing "parties problem," we shall now proceed to complete our decision-making process regarding the TILA aspect of this proceeding. Perhaps the easiest issue presented by the instant proceeding is ascertaining

**4.** 15 U.S.C. § 1638.

Sales not under open end credit plans

(a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the following items which is applicable:

. . . . .

(10) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

**5.** 12 C.F.R. § 226.8 Credit Other Than Open End—Specific Disclosures.

. . . . .

(b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:

. . . . .

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of

that a violation of former 15 U.S.C. § 1638(a)(10)[4] of the TILA and former TILA Regulation 12 C.F.R. § 226.8(b)(5)[5] arises from the attempt of the Mortgagee's assignor to disclose the security interest taken in the transaction.

The disclosure statement provides as follows:

XI. The security for this obligation is a first mortgage lien on the land, dwelling and improvements located at *1653 North Redfield Street, Philadelphia, PA.* This obligation will also be secured by a warrant of attorney to confess judgment against the Borrower(s). The filing of such warrant of attorney to confess judgment results in a lien against all real estate now or hereafter acquired by the Borrower(s). The foregoing mortgage may secure future advances and after acquired property may be subject to the above liens.

Meanwhile, the mortgage itself recites the security taken as follows:

AND TOGETHER, in the case of each premises hereby mortgaged, with all and singular the installations, fixtures, appliances, property, machinery and equipment appurtenant thereto, or used in con-

the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. *In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable.* If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired (emphasis added).

The language emphasized is relied upon by the Mortgagee in its argument discussed at page 950 *infra.*

nection therewith, whether attached or detached, now or hereafter installed in or used in connection with each mortgaged premises or the operation of the plant or business situate therein, and all additions to, substitutions for and replacements of any of the said installations, fixtures, appliances, property, machinery, and equipment. All of the premises above described and hereby mortgaged and the said buildings, improvements, installations, fixtures, appliances, property, machinery, equipment, interests and rights hereby granted, conveyed and mortgaged, or intended so to be, are hereinafter collectively referred to as the "Mortgaged Premises."

The recitation in the disclosure statement is under-inclusive, as it makes no mention of the security interest taken in the "installments, ... appliances, property, machinery, and equipment," which clearly includes non-fixtures and probably all of the Debtor's personal property in the premises. Our district court and this court have held that the failure to disclose such a security interest is violative of TILA time after time after time. *See, e.g., Searles v. Clarion Mortgage Co.,* C.A. No. 87–3495, slip op. at 7–10 (E.D.Pa. Dec. 7, 1987) (BRODERICK, J.) [available on WESTLAW, 1987 WL 27502]; *Gambale, supra,* 80 B.R. at 309–10 (KATZ, J.); *In re Whyte, Whyte v. Citicorp Homeowners Service, Inc.,* Bankr. No. 87–00967S, Adv. No. 87–0677S, slip op. at 2–3 (Bankr.E.D.Pa. April 4, 1988) [available on WESTLAW, 1988 WL 52153]; *Parker, supra,* 80 B.R. at 730–31; *In re Martin,* 72 B.R. 126, 128 (Bankr.E.D.Pa.1987); and *In re Cervantes,* 67 B.R. 816, 818–19 (Bankr.E.D.Pa.1986) (GOLDHABER, CH. J.).

■ The Mortgagee recites two tired defenses. The first is that recitation of the security actually taken would be so lengthy that a reference to the mortgage is sufficient. *See* 12 C.F.R. § 226.8(b)(5).[6] This argument might be persuasive if the disclosure made *some* reference to the fact that

security was taken in the Debtor's personalty. However, it does not. Also, the force of this argument is severely undercut by two observations. First, the pertinent paragraph in the disclosure statement contains 84 words, not a significant reduction of the 119 words in the pertinent clause of the mortgage. Secondly, the disclosure statement appears to be over-inclusive in another aspect, i.e., by reciting that it "may" secure future advances and after-acquired property which the mortgagee apparently does *not* include among the security actually taken. This over-inclusive aspect of the mortgage is an independent violation of former 15 U.S.C. § 1638(a)(10) and 12 C.F.R. § 226.8(b)(5). *See, e.g., In re Matzulis,* 74 B.R. 552, 554 (Bankr.E.D.Pa. 1987), *remanded on other grounds,* C.A. No. 87–4390 (E.D.Pa. Nov. 18, 1987); *Martin, supra,* 72 B.R. at 128; *Johnson–Allen, supra,* 67 B.R. at 971–73; and *In re Perry,* 59 B.R. 947, 948–49 (Bankr.E.D.Pa.1986) (GOLDBERGER, CH. J.). It appears illogical to argue that the security interest in fact taken in the transaction cannot be described at least generally due to its length, when, or on the other hand, the disclosure statement adds unnecessarily to its length by "disclosing" non-existent security interests.

■ Secondly, the Mortgagee argues that the Debtor may not seek recoupment against Mortgagee's arrears as opposed to seeking recoupment against the Mortgagee's entire secured claim. We rejected this precise same argument in *Whyte, supra,* slip op. at 3–4; and *Parker, supra,* 80 B.R. at 732–32, citing to this court's earlier decisions which clearly allowed recoupment against a "claim" for mortgage arrears. *In re Jablonski,* 70 B.R. 381, 390 (Bankr.E. D.Pa.1987); *In re Schultz,* 58 B.R. 945, 946–47 (Bankr.E.D.Pa.1986) (GOLDHABER, CH. J.); and *In re DiCianno,* 58 B.R. 810, 812, 814 (Bankr.E.D.Pa.1986) (GOLDHABER, CH. J.). Not surprisingly, we reject that argument here once again.

---

**6.** This argument is based upon the language of that Regulation emphasized at page 949 n. 5

*supra.*

We therefore conclude that the Debtor is entitled to recoupment of $1,000.00 against the Mortgagee in light of the aforesaid TILA violation.

### E. THE MÓRTGAGEE'S PRE–FORECLOSURE NOTICE VIOLATED ACT 6, ELIMINATING ITS CLAIM FOR FEES AND COSTS ARISING FROM THE STATE–COURT FORECLOSURE PROCEEDING

We now turn to the Debtor's contention that the Mortgagee's claims for fees and costs must be stricken due to the Mortgagee's violations of Act 6, and the Mortgagee's counter-contentions, confined, by agreement of the parties, solely to the issue of whether the notice dispatched by the Mortgagee to the Debtor and his wife was in fact violative of Act 6.[7]

As Judge Fox's exhaustive analysis of Act 6 in *In re Schwartz,* 68 B.R. 376, 377–79 (Bankr.E.D.Pa.1986), points out, Act 6 contains numerous consumer protection provisions, among which is a mandatory requirement that a lender seeking to commence any action to foreclose upon a mortgage or other "security document" must precede doing so by dispatch of a notice containing certain required disclosures and an opportunity for the obligor(s) to cure any default. The contents of the notice are prescribed by 41 P.S. § 403(c), which provides as follows:

(c) The written notice shall clearly and conspicuously state:

(1) The particular obligation or real estate security interest;

(2) The nature of the default claimed;

(3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;

(4) The time within which the debtor must cure the default;

(5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

(6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

The strong Pennsylvania policy of preventing forefeitures, *see In re Sudler,* 71 B.R. 780, 785 (Bankr.E.D.Pa.1987), and minimizing injustice to consumers through foreclosure of their homes, *see Charles H. Salmon Building & Loan Ass'n v. Mroz,* 6 Pa.D. & C.3d 59, 60 (Phila.Co.C.P.1977), is served by a strict construction of Act 6, which imposes "a set of maximum technical restrictions on the operation of the foreclosure mechanism." *Kennedy Mortgage Co. v. Washington,* 12 Pa.D. & C.3d 476, 480, 481 (Phila.Co.C.P.1979). *Cf. In re Fox, Fox v. Hill,* 83 B.R. 290, 294–95, 297–98 (Bankr.E.D.Pa.1988) (Both the

---

**7.** We believe that it is highly significant that no prepetition judgment was entered in the state court foreclosure action. While we recognize, with Chief Judge Emeritus Lord of the district court, *see Main Line Federal Savings & Loan Ass'n v. Joyce,* 632 F.Supp. 9, 10 (E.D.Pa.1986), that compliance with Act 6 may be a prerequisite to exercise of subject matter jurisdiction, we also recognize that Judge Lord, in *Werts v. Federal National Mortgage Ass'n,* 48 B.R. 980, 984–85 (E.D.Pa.1985), refused to strike a claim for fees and costs in an "unmolested" state court judgment even though pre-judgment Act 6 violations were found to exist. We believe that some distinction in the impact upon a state-court foreclosure judgment should be made between a situation where the mortgagee commits very significant Act 6 violations, *see In re Sharp,* 24 B.R. 817, 820–21 (Bankr.E.D.Pa.1982) (mortgagee mis-addressed Act 6 notice), as opposed to less significant, technical violations. *See Jab-*

*lonski, supra,* 70 B.R. at 390 n. 7. It must be recalled that bankruptcy courts are limited in their power to reverse state court decisions. *See Heiser v. Woodruff,* 327 U.S. 726, 732–37, 66 S.Ct. 853, 855–58, 90 L.Ed. 970 (1946); *Kelleran v. Andrijevic,* 825 F.2d 692, 694–95 (2d Cir.1987); *In re Gulph Woods Corp.,* 84 B.R. 961, 970–71, (Bankr.E.D.Pa.1988); and *In re Farrell,* 27 B.R. 241, 245–47 (Bankr.E.D.N.Y.1982). Exceptions may arise if the state court judgment is constitutionally deficient, *see In re Souders,* 75 B.R. 427, 432–33 (Bankr.E.D.Pa.1987), or if the judgment has been fraudulently or collusively procured. *See, e.g., Browning v. Navarro,* 826 F.2d 335, 344–46 (5th Cir.1987); *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.,* 249 F.2d 221, 224–25 (2d Cir.1957); *Bowers v. Connecticut Nat'l Bank,* 78 B.R. 388, 393–94 (D.Conn.1987); and *In re Fill,* 82 B.R. 200, 216–18 (Bankr.S.D.N.Y.1987).

Pennsylvania legislature, in enacting Act 91, and Congress, in enacting certain provisions of § 365 of the Bankruptcy Code, have expressed a strong public policy in allowing families to retain their residences).

■ The Debtor asserts a variety of Act violations, some of which, even given the most strict and pro-mortgagor interpretation of Act 6 possible, we cannot sustain. One is that the Act 6 notice was sent only eleven (11) days after the Act 91 notice, thereby allegedly creating a "confusing and contradictory manner" of dispatching the requisite notices. We perceive nothing in either Act 6 or Act 91 which dictates a given sequence in dispatch of these notices, nor does the Debtor point to any particular provision of 41 P.S. § 403(c) violated thereby. In the absence of any evidence that the Debtor actually was confused by this sequence in dispatches of the notices required by both Acts, we cannot find this action of the Mortgagee to be violative of Act 6 as a matter of law, as the Debtor suggests.

Secondly, the Debtor claims that a statement in the notice that he only "may" have a right to sell the property was misleading and violative of 41 P.S. § 403(c)(6), because he actually *did* have such a right. However, it is debatable, as a matter of grammar, whether the word "may" conveys doubt or certainty as to whether the Debtor could do so. Moreover, any doubt should have been eliminated by the language of the sentence immediately prior to that using the word "may," in which it is unequivocally stated that "you *have* the right to sell the property...." (emphasis added). We therefore reject this claim of a defect in the notice.

■ Thirdly, the Debtor claims that the notice violated 41 P.S. § 403(c)(5) in advising that a sheriff's foreclosure sale could be conducted in "approximately three months from now," when this court could take judicial notice that in fact such a sale could not occur within such a short timeframe. However, we are not able to take judicial notice of any facts except those "not subject to reasonable dispute" be-

cause they are "generally known" within the jurisdiction or can be ascertained from resort to unimpeachable sources. Federal Rule of Evidence 201(b). We do not believe that a sufficient record has been made to conclude that the statement in the notice is necessarily erroneous. Further, the notice states that the sale date is only "approximately" three months off. Therefore, without a record supporting the conclusion that the notice is clearly erroneous or that the Debtor was misled thereby, we are not inclined to hold that this recitation constitutes a violation of Act 6, either.

■ To understand the contention of the Debtor which we do deem to be meritorious, i.e., the failure of the notice to recite "exactly what performance including what sum of money, ... must be tendered to cure the default," per 41 P.S. § 403(c)(3), it is necessary to reproduce the beginning portion of the text of the notice. This reads as follows:

NOTICE OF INTENTION
TO FORECLOSE
MORTGAGE
Mortgaged Property
1653 N. REDFIELD ST.
PHILA., PA 19151

Meritor Mortgage Corporation–East is the holder of the first mortgage on your property described above, or is the mortgage service contractor for such holder. The mortgage is in SERIOUS DEFAULT because you have not made the monthly payments for:
3/01/86 through 5/01/86 at $151.24 each

____ ____ ____

through        at        $

____ ____ ____

Late charges have also accrued to this date in the total amount of: $ 10.15

NSF check and other charges have accrued in the total amount of: $ \_\_\_\_

The total amount now required to cure this default; or in other words, get caught up in your payments, as of the date of this letter is: $463.87

You may cure this default within THIRTY (30) DAYS of the date of this letter, by paying to us the above amount, plus any additional monthly payment and late charge which may fall due during this period. Such payment must be made either by cash, cashier's check, certified check or money order, and made at the office of Meritor Mortgage Corporation-East, 760 W. Sproul Rd., Springfield, Pa. 19064. Payment may be made by mail, but must be received in our office by the times specified in this notice.

The Debtor points out that the reader cannot ascertain the exact amount due at any point in time subsequent to the date of dispatch of the notice because the method for computing the late charges (or, we might add, the "NSF check and other charges" either) are not disclosed in the notice. Moreover, the mortgage recites that late charges are to be computed at four (4%) percent of the principal and interest payment of $93.58 monthly. *Compare In re Andrews,* 78 B.R. 78, 80–81 (Bankr.E.D.Pa.1987) (mortgagee erroneously computed late charges on the entire monthly payment rather than on the sum of principal and interest, as the mortgagee provided). The late charge authorized by the mortgage calculates to be $3.74 per month. It is totally unclear how the figure of $10.15 purportedly due for the three months' delinquency in payments which existed as of the date of the notice, May 23, 1986, was ascertained. There is, therefore, no hint contained in the notice for calculation of same.

This court is aware of a large body of brief and unreported Philadelphia Court of Common Pleas decisions, by several different judges of that court, which support the Debtor's contention that a failure to provide a formula to allow the mortgagor to calculate the exact amount due to cure the default at any point in time is violative of 41 P.S. § 403(c)(3). However, before citing to same, we note that errors in computation of the amounts required to be paid by mortgagors for reinstatement were held violative of Act 6 by former Judge Lord of our own district court in both *Joyce, supra,* 632 F.Supp. at 10; and *Werts,* 48 B.R. at 984–85. There appears to be at least a slight error in the calculation here.

The state court decisions include *Lomas & Nettleton v. Schramm,* July Term, 1987, No. 5342 (Phila.Co.C.P. Nov. 16, 1987) (LEHRER, J.) (form held defective for failure to disclose "daily or periodic accrual of mortgage, interest, and/or late charges"); *Commonwealth School Employees Retirement Fund v. Neal,* Dec. Term, 1981, No. 144 (Phila.Co.C.P. March 10, 1982) (GAFNI, J.) (same); *Fidelity Consumer Discount Co. v. Sirianni,* May Term, 1981, No. 3847, slip op. at 4 (Phila.Co.C.P. Jan. 18, 1982) (HILL, J.) (mortgagor must be "informed precisely what [the] late charge is"); *Beneficial Consumer Discount Co. v. Sirianni,* April Term, 1979, No. 326 (Phila.Co.C.P. July 12, 1979) (FORER, J.) (mortgagee must inform the mortgagor of "the monthly rate of late charges"); and *Lomas & Nettleton Co. v. Bennett,* June Term, 1978, No. 3121 (Phila.Co.C.P. Dec. 16, 1978) (ANDERSON, J.) (note failed to set forth, *inter alia,* "the monthly rate of late charges").

The Mortgagee, obviously conversant with a large stock of unreported Philadelphia Common Pleas decisions, given its counsel's specialty in the area of mortgage

foreclosures for over ten years, *see Nickleberry, supra,* 76 B.R. at 418–19 & n. 7, could reply in kind with *no* decision in which a court has expressly held that a failure to include the monthly rate of late charges was *not* an Act 6 violation.[8] The defense presented by the Mortgagee here was thus not based on decisional law anywhere in its favor on the facts, but merely the general legal principle that the form utilized by the Mortgagee here was "in the form prescribed by the Pennsylvania Department of Banking, 10 Pa.Code Section 7.4." Memorandum in Opposition to Debtor's Objection to Claim, at 7.

We do observe that the form published by the Department of Banking carries more weight than a garden-variety agency submission of a suggested form, as the Pennsylvania legislature has specifically stated that the form of notice prescribed by the Secretary of Banking "shall be interpreted as satisfying the requirements of section 403 of [Act 6]." 7 P.S. § 6020–166. The Mortgagee further cites to several decisions of one Common Pleas judge, the Honorable Thomas A. White, holding that use of a notice in conformity with that prescribed in 10 PA.CODE § 7.4 constitutes compliance with 41 P.S. § 403(c), *Horizon Financial, F.A. v. Foy,* April Term, 1984, No. 6603, slip op. at 2–3 (Phila.Co.C. P. Oct. 16, 1985); and *Pulaski–Bridesburg Perpetual Savings Ass'n v. Malia,* 8 PHILA. 547, 549 (1983), and that a notice "which does not strictly follow the Model Act 6 Notice promulgated by the Secretary of Banking" is, for that reason, violative of 41 P.S. § 403. *Indiana Mortgage Corp. v. Schauland,* May Term, 1985, No. 161 (Phila.Co.C.P. March 26, 1986).

The citation of Judge White's decisions may prove too much. Although the form utilized by the Mortgagee here is *substantially* in conformity with the model form, it does *not* "strictly follow" it. Thus, Judge White might be inclined to rule *against* the

Mortgagee here on the basis of his holding in *Schauland.*

However, we note that none of the other judges of the Philadelphia Court of Common Pleas except Judge White appear transfixed by the presence of the model form. We do not believe that, by perpetuating a form, the Secretary of Banking either was empowered to or meant to overrule all of the cases cited herein which establish that the notice must, at a minimum, recite the monthly late charge and how same is computed as of any future date in order to comply with 41 P.S. § 403(c)(3). Ideally, the notice should provide not only the amount of the late charge, but the day of the month on which such a charge is imposed when a payment is delinquent if the mortgagor is to be able to compute this charge as of a certain date. The model form contains numerous blanks which must be filled in with figures, and we believe that, at a minimum, the monthly late charge and method of its computation, as well as any "other charges" which may be added, must be disclosed along with the amount of the regular monthly payment if a notice is to strictly comply with 41 P.S. § 403(c)(3).

In summary, as to the model form, we conclude that its function is to suggest skeletal language which, if fleshed out accurately, would constitute compliance with Act 6. We do not believe that use of the model form verbatim is the exclusive means of compliance with 41 P.S. § 403, nor do we believe that a failure to fill in requisite accurate and specific information or figures can be circumvented by use of the skeletal form. It is merely a model which must be properly adapted to a particular factual circumstance by accurate and full completion.

We therefore conclude that the notice dispatched to the Debtor here is not in technical compliance with 41 P.S. § 403(c)(3). Since no foreclosure judgment

---

**8.** From its stock of decisions, the Mortgagee is able to cull only a few decisions which, without comment, deny Preliminary Objections based upon violations of Act 6. *Boulevard Mortgage Co. v. Dukes,* Nov. Term, 1986, No. 2983 (Phila. Co.C.P. Feb. 17, 1987) (LEHRER, J.) (*But see* Judge Lehrer's decision in *Schramm, supra* ); *Federal Nat'l Mortgage Ass'n v. Lacy,* May Term, 1986, No. 197 (Phila.Co.C.P. Sept. 11, 1986) (DiBONA, J.); and *Fleet Real Estate Funding Corp. v. Kalup,* Feb. Term, 1986, No. 1123 (Phila.Co.C. P. May 6, 1986) (DiBONA, J.).

was entered by the state court pre-petition[9] and the Mortgagee agreed that, assuming that the indispensable party issue was surmounted by the Debtor, its claim for attorney's fees and costs was dependent on a finding that Act 6 was not violated, we must strike this portion of the Mortgagee's claim. We will proceed to do so in the accompanying order.

## ORDER

AND NOW, this 21st day of April, 1988, upon consideration of the Stipulation of Facts which counsel for the parties agreed would constitute the record in this proceeding, and the Cross–Motions for Summary Judgment and Briefs supporting same submitted by the parties, as well as the Supplemental Briefs submitted by them in response to our Order of March 29, 1988, it is hereby ORDERED AND DECREED as follows:

1. The Plaintiff–Debtor's Motion for Summary Judgment is GRANTED in all respects, and the Defendant–Mortgagee's Cross–Motion for Summary Judgment is DENIED in all respects.

2. The Secured Claim of the Mortgagee is allowed in the amount of $1,307.90 only.

3. The parties are directed to confer to resolve the issue of attorney's fees and costs due to the Debtor's counsel, but, if they are unable to do so, and the Debtor has made a reasonable demand, the Debtor's Counsel is accorded an opportunity to file a Motion requesting Attorney's fees and costs, including compensation on the fee application, if such is necessary, per 15 U.S.C. § 1640(a)(3), same to be filed within thirty (30) days hereafter and to be procedurally in conformity with *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates*, 78 B.R. 41 (Bankr.E.D.Pa.1987).

4. The Confirmation Hearing in this case, scheduled on May 19, 1988, having been continued *four* times, *shall not be continued further.*

---

**9.** But see page 951 n. 7 *supra.*