In re Elaine VITELLI a/k/a Elaine Mothes, Debtor.

Elaine VITELLI a/k/a Elaine Mothes, Plaintiff,

v.

CHELTENHAM FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

Bankruptcy No. 87–02374S.
Adv. No. 88–0828.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 8, 1988.

As Amended Jan. 10, 1989.

Irwin Trauss, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Brian G. Howland, Nathalie D. Martin, Philadelphia, Pa., for defendant.

Elaine Vitelli, Philadelphia, Pa., plaintiff/debtor.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before us are the Debtor's request that her Second Amended Chapter 13 Plan be confirmed and the above-captioned adversary proceeding. The decision on confirmation is, in the present procedural configuration, dependent on adherence to our previously-announced rulings in the adversary proceeding, with a change to which the parties agree in the principal balance of the parties' mortgage. We do adhere to our previous rulings and address herein our reasons therefor.

The adversary proceeding in issue presents a challenge by a Chapter 13 Debtor to a demand for recovery of attorney's fees and costs in a Proof of Claim filed by her mortgagee, CHELTENHAM FEDERAL SAVINGS AND LOAN ASSOCIATION (hereinafter referred to as "the Mortgagee"). In deciding the adversary proceeding, we are obliged to revisit several of our previous decisions concerning the rights of a mortgagee to include expenditures for attorney's fees and costs in its Proof of Claim, most notably *In re Nickleberry*, 76 B.R. 413 (Bankr.E.D.Pa.1987). We reaffirm the holding in *Nickleberry*, on essentially the same facts, that attorney's fees and costs expended for post-petition services are not recoverable. However, we revise our holding therein that 11 U.S.C. § 506(b) applies to any aspect of a "claim" for mortgage arrears in a case in which the debtor is seeking to cure arrears, as opposed to seeking to pay off the entire remaining mortgage balance. We now hold that § 506(b) has no application to pre-petition or post-petition services in such an instance. However, since the instant case involves a "true" secured claim for the entire mortgage balance, we do apply § 506(b) here and conclude that the Mortgagee has only met its burden of proof as to $1,101.05 of demands totaling $3,387.46 for assorted costs, charges, and attorney's fees. We deduct an agreed $1,000.00 recoupment for a violation of the Truth–in–Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter "TILA"), in the writing of the mortgage loan documents. The parties ultimately agreed that the principal mortgage balance due to the Mortgagee is $23,-364.04. We reject the belated attempts of the Mortgagee to object to the deduction of the post-petition payments, agreed to be $7,651.00, from the net remaining claim of $23,465.09, and conclude that the valid secured claim of the Mortgagee is $15,814.09.

We also reject belated attempts of the Mortgagee to belatedly raise additional Objections to Confirmation of the Debtor's Second Amended Plan and proceed to indicate that we will, indeed, confirm it.

### B. PROCEDURAL HISTORY

The Debtor filed the underlying Chapter 13 bankruptcy case on May 14, 1987. On the occasion of the fourth continued Confirmation Hearing, we issued an Order of May 25, 1988, stating that we would continue the hearing just one more time, until July 12, 1988, pending the Debtor's filing whatever pleading was necessary to assure confirmation, and scheduling a hearing on any matter filed on that date.

Shortly thereafter, in response to this Order, the Debtor, on June 10, 1988, filed the instant adversary proceeding. We reluctantly continued that hearing and the confirmation hearing again until August 16, 1988, at which time a hearing on a motion to dismiss the case emanating from the Standing Chapter 13 Trustee was also scheduled.

At that time, counsel agreed to submit this proceeding on a Stipulation of Facts to

be filed by August 23, 1988, and Briefs to be submitted on or before September 22, 1988 (Debtor's Opening Brief), October 21, 1988 (Mortgagee's Brief), and November 3, 1988 (Debtor's Reply Brief). A hopefully final continued hearing on Confirmation and the Trustee's Motion to Dismiss were scheduled on November 22, 1988, with no further continuances to be granted.

Unfortunately, as of late September, 1988, no filings pursuant to the Order of August 16, 1988, appeared. After fruitlessly waiting for a promised Stipulation reciting a revised schedule, we issued an Order of October 11, 1988, requiring the filing of the Stipulation of Facts and an Opening Brief of the Debtor on or before October 17, 1988; the Defendant's Brief by November 11, 1988; and a Reply Brief from the Debtor by November 17, 1988, under penalty of our sanctioning counsel who failed to strictly comply therewith. The November 22, 1988, hearing date on Confirmation and the Trustee's Motion was maintained.

As of November 18, 1988, we had received the Stipulation and one Brief from both parties, but no Reply Brief from the Debtor. Assuming no further submissions were forthcoming, we issued an Order of November 21, 1988, calculating from what we believe was an agreement that the principal balance due on the Debtor's mortgage was $29,194.00.

We were, however, confronted, at the November 22, 1988, hearing with a Motion to reconsider several aspects of our Order by the Debtor, most notably a contention that we had erred in assuming that $29,-194.00 was the agreed principal balance. The Debtor also filed the Second Amended Plan[1] that day, which contemplated a repayment of $15,713.04 after credit of a figure of $7,651.00. We responded by rescheduling that confirmation hearing on

November 29, 1988, at which time we assured counsel that we would resolve the issue of the correct principal balance due.

As it developed, on November 29, 1988, the parties agreed to the principal balance figure of $23,364.04 and that the Debtor had remitted a total of $7,651.00 in post-petition payments, rendering the figures in the Second Amended Plan completely accurate. The Debtor also asked us to reconsider our allowing any fees and costs to the Mortgagee and denial of any attorney's fees to her under 41 P.S. § 503. The Mortgagee, although it had never raised these issues in previous Objections to confirmation of the Debtor's original Plan filed on November 25, 1987,[2] or thereafter, and had conceded the point in its briefing in the adversary proceeding, now argued that (1) The Debtor should not receive full credit of her post-petition payments against its claim, but some unspecified amount should be deducted for insurance premiums paid on her behalf by the Mortgagee; and (2) It should receive interest between the date of filing and confirmation.

We indicated an intention to deny all of these requests and objections. The issues raised by the Debtor are discussed within. The belated Objections to Confirmation presented by the Mortgagee are denied because of the failure to file and serve same, as required by Bankruptcy Rule 3020(b)(1).[3]

## C. BASIC FACTS AND CONTENTIONS OF THE PARTIES

The Proof of Claim at issue in this proceeding was filed on July 8, 1988, and was a second amendment to the Mortgagee's original claim. If was filed after commencement of this proceeding and represented a partial response to the Debtor's Complaint.

---

1. We do not note that the original Plan, filed July 14, 1987, had been amended before. This designation may therefore be a misnomer but we shall use it to avoid any further confusion.

2. The issues raised in the Objections related to the length of the Plan and its purported infeasibility. These issues were appropriately abandoned by the Mortgagee on November 29, 1988.

3. Even though the Debtor's filing of her Amended Plan on November 22, 1988, shortened the period to object, we note that these same Objections, though equally applicable to the Debtor's original Plan filed on July 14, 1987, were never previously raised.

The contents of the claim are recitation of a "Principal Amount" due of $29,194.00 and the following "Additional Charges:"

| | |
|---|---|
| Late Charges | $ 680.86 |
| Misc. fees—2 insufficient checks @ $15.00 | 30.00 |

Costs:

| | | |
|---|---|---|
| Complaints in Foreclosure (2) | $ 224.20 | |
| Foreclosure Search (2) | 312.00 | |
| Entry of Judgment | 18.00 | |
| Praecipes and Motions Fees | 48.00 | |
| Postage | 5.56 | |
| Telephone | 10.04 | |
| Duplicating | 225.60 | $ 843.40 |

Attorney fees

| | | |
|---|---|---|
| Foreclosure action | 1,188.20 | |
| Bankruptcy action | 645.00 | 1,833.20 |
| | | $3,387.46 |

The total Proof of Claim was thus in the amount of $32,581.46.

The Debtor contended, and, in its briefing, the Mortgagee concurred, that all post-petition payments made by the Debtor should be deducted, as it was the goal of the Debtor to pay off her entire mortgage balance over the course of the Plan, rather than to merely cure mortgage arrearages.

The "Bankruptcy action" attorney fee claim is contested by the Debtor on the basis of our holding in *Nickleberry, supra,* 76 B.R. at 423–26. Alternative challenges are raised to all of the other "additional charges" entries. As a first alternative, the Debtor contends that, prior to both of two state court mortgage foreclosure lawsuit instituted against the Debtor, the Mortgagee failed to dispatch a "notice of intention to foreclose" which complied strictly with Act No. 6 of 1974, 41 P.S. § 101, et seq. (hereinafter "Act 6"), particularly 41 P.S. § 403(c) thereof. She then cites our decision in *In re Mosley,* 85 B.R. 942, 951–54 (Bankr.E.D.Pa.1988), for the proposition that, if no valid notice pursuant to 41 P.S. § 403(c) is provided, all costs and

fees associated with the state court foreclosure proceedings thereafter must be stricken.

As a second alternative, she argues that the Mortgagee has failed to meet its burden of proving that much of the pre-petition services for which costs and fees are requested fall within 11 U.S.C. § 506(b). In the course of this discussion, the Debtor submits that, since the original foreclosure action was voluntarily withdrawn by the Mortgagee, "at least half" of the "Complaints in Foreclosure" and "Foreclosure Search" entries should be eliminated. Memorandum in Support of the Debtor's Complaint Objecting to the Second Amended Proof of Claim of Cheltenham Federal Savings and Loan Association (hereinafter referred to as the "Debtor's Memo"), at 16. Later, it is urged the late charges be "reduced to $327.95." *Id.* at 17.

All of the other charges are contested, particularly the "Entry of Judgment" charge. Relevant to this contention was the Mortgagee's Stipulation, after it learned that the bankruptcy in issue had been filed only after a state-court motion for summary judgment in its favor had been granted, to remove the judgments against the Debtor as erroneously entered in violation of the automatic stay as long as it was permitted to retain its lien position. The Debtor suggests that all post-petition services must be deducted from the entry for "Foreclosure action attorney fee" as acts in violation of the stay. Next she contends that the remaining figure "must be cut in half" because two foreclosure actions should have been unnecessary. Debtor's Memo, at 17.

The Mortgagee responds by, initially and without citing any authority to the contrary, urging us to reconsider our *Nickleberry* holding regarding denial of fees and costs for post-petition services to mortgagees. Next, it argues that its use of the "model form" promulgated by the Secretary of Banking insulates it from attack that its most recent Act 6 notice failed to comply with 41 P.S. § 403(c). *But see Mosley, supra,* 85 B.R. at 954. Finally, it contends that justification for all of the

costs and fees claimed can be extracted from vigorous analysis of the following unexplained raw data attached to the Stipulation of Facts: (1) The parties' Mortgage and Note; (2) The 14–page Statement of Mortgage Account between the parties; (3) The Act 6 notices forwarded to the Debtor before commencement of each of the foreclosure actions; and (4) The docket entries from each of the foreclosure actions, revealing that the bankruptcy filing was only the culmination of a long series of dilatory maneuvers emanating from the resourceful brain of the Debtor's counsel since the filing of the initial foreclosure action on April 30, 1985.

### D. THE MORTGAGEE'S CLAIMS FOR POST–PETITION SERVICES, WHICH WE NOW HOLD ONLY IMPLICATE 11 U.S.C. § 506(b) WHEN, LIKE HERE, A DEBTOR SEEKS TO PAY OFF THE ENTIRE MORTGAGE BALANCE IN A CHAPTER 13 PLAN, MUST BE DENIED.

■ The parties agree that our *Nickleberry* Opinion, 76 B.R. at 423–26, establishes that, under the instant facts, attorney's fees cannot be awarded to the Mortgagee on account of performance of post-petition services by its counsel in this bankruptcy court. Our analysis therein was based on two lines of reasoning. The first, quoting our prior decision in *In re Tashjian*, 72 B.R. 968, 975 (Bankr.E.D.Pa.1987), is expressed thusly, 76 B.R. at 424:

"only extraordinary situations, such as where legally unjustifiable conduct of a party or counsel for a party is established, or where the debtor requests some extraordinary dispensation, would we grant attorneys fees to counsel for the opposing party for his services in bankruptcy court. A contrary result would be inconsistent with not only the 'American rule,' as we indicated in [*In re*] *United Nesco* [*Container Corp.,* 68 B.R. 970 (Bankr.E.D.Pa.1987)], but our frequently-reiterated view that we will allow attorneys fees and costs only where the Code specifically allows same" (citations omitted).

The other line of reasoning was based on 11 U.S.C. § 506(b), which we held was the only basis pursuant to which the Code could conceivably be said to justify allowance of claims for services performed in bankruptcy court, 76 B.R. at 423–24, and provides as follows:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Again quoting from *Tashjian,* 72 B.R. at 974, we held, 76 B.R. at 423, that fees or costs were recoverable under 11 U.S.C. § 506(b) only if all conditions of the following four-pronged test were satisfied:

"such fees are (1) allowable under the terms of § 506(b); (2) provided for in the parties' agreement; (3) reasonable; and (4) allowable under pertinent state law."

We believe that, in part, our analysis in *Nickleberry,* was flawed. Earlier in that Opinion, in considering charges for pre-petition services, we had carefully and we believe correctly reasoned that § 506(b) was not applicable in an analysis of a mortgagee's claims for costs and fees where the debtor, like the debtors in the four cases considering together in *Nickleberry,* were proposing to pay mortgage arrears rather than liquidate the entire mortgage balance through a Chapter 13 plan. 76 B.R. at 420. This, is because, as we pointed out in *In re Small,* 65 B.R. 686, 689–92 (Bankr.E.D.Pa. 1986), *aff'd,* 76 B.R. 390 (E.D.Pa.1987), a precursor to the decision in *In re Capps,* 836 F.2d 773 (3d Cir.1987), a statement of a mortgagee setting forth the alleged amount of mortgage arrears which must be paid through a Chapter 13 Plan to cure mortgage delinquencies is distinct from a "secured claim," which represents the entire balance owed on a mortgage and is the focal point of § 506(b).

However, when we considered charges for post-petition services later in the *Nick-*

*leberry* Opinion, 76 B.R. at 423–26, we put aside the distinction which we had pointed out in *Small*, and held that § 506(b) applied to pseudo-"secured claims" for mortgage arrears. We now believe that our analysis of charges by mortgagees for post-petition services, where the mortgagor seeks to cure mortgage arrears in his Plan, was incorrect. Section 506(b) should be equally inapplicable to any pseudo-"secured claim" for mortgage arrears, whether the services in issue are post-petition or pre-petition.

We make this observation merely to set the record straight. In the Chapter 13 case underlying the instant adversary proceeding, the goal of the Debtor is not to cure arrears in mortgage payments, but to pay off the entire mortgage balance. In such an instance, the sum to be liquidated in a Chapter 13 Plan is a "real" secured claim. Therefore 11 U.S.C. § 506(b) applies to the Proof of Claim of the Mortgagee in issue her, as to its requests for compensation for pre-petition as well as post-petition services.

We also doubt whether this articulated change of position would have altered the outcome in *Nickleberry*, in which we considered four cases where debtors were curing mortgage arrears. In *Nickleberry*, 76 B.R. at 420, despite the articulated inapplicability of § 506(b) to pre-petition charges, we held, quoting *Small*, 65 B.R. at 692, that " 'the parties' contract, and the manner in which that contract would be construed under state law' " controlled the disposition of claims of a mortgagee for pre-petition services. This involves the same considerations as the four-prong test for determining whether such charges are allowable under § 506(b), with the exception of the first prong, *i.e.*, that the charges are allowable under § 506(b) because the value of the property is greater than the amount of the claim, or that the claimant is over-secured.

■ The Mortgagee concedes that, since the Debtor here plans to pay off her mortgage obligation in full, § 506(b) is applicable. The Mortgagee does not appear to contest the propriety of the four-prong test developed in *Nickleberry* and *Tashjian*. It also does not claim any material factual distinction between the instant case and those of the cases considered together in *Nickleberry* where compensation for post-petition services was sought in the respective mortgagees' Proofs of Claim, i.e., the Nickleberry, Jackson, and Leatrice Davis cases, where the mortgagees sought $300.00 for filing a motion for relief from the automatic stay and $50.00 and $100.00 for filing proofs of claim, respectively. Here, no motion for relief from the automatic stay has been filed; the Mortgagee seeks compensation of $645.00 merely for filing its Proof of Claim and, presumably, its efforts to defend that Proof of Claim in this proceeding. The Mortgagee is, further, forced to concede that it does not meet the second (provided in the agreement) or third (reasonability) prong of the four-prong *Tashjian* test under the analysis presented in *Nickleberry* and is therefore compelled to argue, despite citation of any authority to the contrary, that the holdings of *Nickleberry* as to these prongs are incorrect. We hold that the mortgagee has not met its burden of proving the presence of the second, third, or the fourth (allowable under state law) prongs of the *Tashjian* test, and we reject the Mortgagee's invitation to reconsider these aspects of our holding in *Nickleberry*.

We conclude, though not without some reservations, that the first prong of the *Tashjian* test, *i.e.*, establishing that the Mortgagee is over-secured and hence that § 506(b) applies at all, is met. We believe that the Mortgagee rather carelessly fails to assess its burden when it suggests that we "should take notice of the fact" that the Debtor's payment on the mortgage for over thirteen years renders it over-secured. Memorandum in Support of Defendant/Respondent's Answer to Plaintiff/Debtor's Complaint Objecting to the Second Amended Proof of Claim of Cheltenham Federal Savings and Loan Association (hereinafter the "Mortgagee's Memo"), at 4. However, giving the Mortgagee all benefit of the doubt, it does appear, from review of the Debtor's schedules and lack of substantive opposition from the Debtor's vigorous counsel on this point, that the

Debtor does have equity in the mortgaged premises. Therefore, we conclude that the first prong of the test is satisfied.

The presence of the second prong, *i.e.*, whether the charges are provided for in the parties' mortgage, is difficult for the Mortgagee to argue in light of the fact that paragraph 18 of the mortgage in issue is, verbatim, the same as the paragraph considered by us as insufficient to so establish in *Nickleberry. See* 76 B.R. at 424–25.[4] We continue to hold that this clause refers only to charges arising in foreclosure proceedings and not litigation in bankruptcy courts. Clearly, asserting the amount that the Mortgagee is entitled to in a Chapter 13 plan distribution, as in the filing of a Proof of Claim, is not the equivalent of an attempt to foreclose on a mortgage. We continue to believe that the clause in issue is a classic adhesion contract and must be construed narrowly against the Mortgagee. The clause, thus interpreted, was held to be insufficient in scope to embrace automatic stay litigation, as in the Cheryl Nickleberry fact situation considered in the *Nickleberry* Opinion. Therefore, the second prong of the four-part *Tashjian* test is clearly not satisfied by the Mortgagee here. Since all prongs of the test must be satisfied to allow a claim, this conclusion is in itself sufficient to result in denial of the Mortgagee's demands for post-petition services.

Nevertheless, we proceed to consider the third prong of the *Tashjian* test, *i.e.*, the reasonability of the charges imposed. This prong, also, is not satisfied here by comparison with the facts of the Margaret Jackson and Leatrice Davis matters addressed in *Nickleberry.* Here, $645.00 is requested for filing a Proof of Claim, an undertaking which we deemed, in *Nickleberry*, 76 B.R. at 424, sufficiently simple that the respective mortgagees could undertake it themselves and were hence not justified in seeking as little as $50.00 in compensation. The Mortgagee here contends that the calculation and filing of a Proof of Claim "is not necessarily a simple matter" and that the Mortgagee has "incurred significant fees in addressing extensive concerns of Debtor's counsel regarding its Proofs of Claim." Mortgagee's Memo, at 5.

We fail to see how or why the production of the Proof of Claim in this case could justify fees of $645.00. What the Mortgagee may be suggesting by its vague reference to "extensive concerns" of the Debtor's counsel is the Mortgagee's undertaking in defending this adversary proceeding attacking its Proof of Claim. We note that, since we ultimately reduce the "Additional Charges" demanded by the Mortgagee by more than two-thirds, most of these "concerns," though perhaps "extensive," were meritorious. As the Mortgagee concedes, many of its arguments are contrary to dispositions of issues already established in prior decisions of this court. It is patently unreasonable to expect the Debtor to finance the Mortgagee's unsuccessful attempts to re-litigate recent, established precedent. However, we do not rest our conclusion on merely the substantive lack of merit of the Mortgagee's position. We also note that it is contrary to the "American rule" to contend that even a successful

---

**4.** This paragraph reads as follows:

18. Acceleration: Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided by applicable law specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. *Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorney's fees, and costs of documentary evidence, abstracts and title reports* (emphasis added).

litigant can assess attorney's fees against his opponent unless same is expressly authorized by contract or by statute or the opponent is being patently obstreperous, *i.e.*, where his action is "totally legally unjustifiable." It is directly contrary to the "American rule" to hold an opponent liable for every filing necessary to protect one's right against that opponent. We therefore easily conclude that the third prong of the *Tashjian* test is not met here.

Finally, we have considerable doubt as to whether the fourth prong of the *Tashjian* test is met here, either. The most pertinent state law, 41 P.S. §§ 406(2), (3) of Act 6, states as follows:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:

> .    .    .    .    .

> (2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

> (3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

These provisions allow recovery of reasonable attorney's fees only in connection with a "foreclosure or other legal action with respect to" a mortgage. We join the conclusion of Judge Fox in *In re Schwartz*, 68 B.R. 376, 381–84 (Bankr.E.D. Pa.1986), that the term "other legal action," in the contest of 41 P.S. § 406, refers only to legal proceedings to enforce a mortgage obligation in the manner of a foreclosure action, and not to a matter filed to attempt to advance the mortgagee's position in bankruptcy court. Therefore, 41 P.S. §§ 406(2), (3) appears to prohibit a

mortgagee from obtaining any attorney's fees for services for such proceedings in bankruptcy court. Consequently, the fourth prong of the *Tashjian* test does not appear to be met, either.

We therefore have no hesitancy in striking the Mortgagee's attempt to enhance its Proof of Claim by seeking compensation for attorney's fees in connection with the Mortgagee's proceedings in this bankruptcy court.

**E.  THE MORTGAGEE'S FAILURE TO STRICTLY COMPLY WITH 41 P.S. § 403(c) DOES NOT BAR ALL OF ITS DEMANDS FOR PRE–PETITION FEES AND COSTS.**

We now turn to that portion of the Mortgagee's Proof of Claim seeking compensation for pre-petition services, *i.e.*, attorney's fees and costs expended in prosecution of its two state-court foreclosure actions. Here, in contrast to *Nickleberry*, we again apply § 506(b), because, unlike the cases considered therein, the Debtor here is seeking to pay off her entire mortgage balance, not cure mortgage arrears. *See* page 894 *supra.*

Initially, we are met with the Debtor's contention that, in *Mosley, supra*, we held that, where a Mortgagee failed to strictly comply with 41 P.S. § 403(c) of Act 6, the Mortgagee was barred from collecting any costs and fees from the Debtor-mortgagor. However, we note that, although our conclusion that the pre-foreclosure notices dispatched in *Mosley* did not comply with Act 6 was held to bar collection of all costs and fees arising from the subsequent, pre-petition foreclosure suit there, this result followed only because of a stipulation of counsel there "that the Mortgagee's entire claim for attorney's fees and costs should rise or fall with the determination of whether Act 6 had been violated." 85 B.R. at 945.

No comparable stipulation has been made by the Mortgagee's counsel here. We do not believe that the language in 41 P.S. § 406(3) which prohibits collection of attorney's fees or legal expenses incurred

in a foreclosure or other legal action "during the thirty-day notice period provided in Section 403 of this Act" is meant to prohibit the mortgagee from recovering any such charges until there has been strict compliance with 41 P.S. § 403(c).

We note that, generally, violations of Act 6 are raised in state-court foreclosure proceedings as Preliminary Objections. It is not clear that success in such Preliminary Objection requires the mortgagee to file an entirely new foreclosure action, as opposed to merely curing the Act 6 violations before proceeding further in the same action. *See Piper v. Oakes*, 10 Pa.D. & C. 3d 722, 728 (Adams Co.C.P.1979) (only 30–day stay of execution allowed as a cure for technical Act 6 violation); *Mid–Penn Consumer Discount Co. v. Chamberlain*, 8 Pa.D. & C. 3d 752, 755 (Phila.Co.C.P.1979) (mortgagee allowed to reinstate Complaint after complying with Act 6); and *Charles H. Salmon Building & Loan Ass'n v. Mroz*, 6 Pa.D. & C. 3d 59, 64 (Phila.Co.C.P.1977) (mortgagee permitted to file amended complaint after compliance with Act 6). Therefore, we conclude that it is not always proper to eliminate all costs and fees expended by a mortgagee in a foreclosure action because of failure to comply, in just a technical sense, with 41 P.S. § 403(c), prior to institution of the action.

We believe that elimination of all such costs and fees in this particular instance would be inappropriate. We note that the Debtor here filed two batches of unsuccessful Preliminary Objections in the state-court foreclosure proceedings. It is very likely that these filings asserted the very Act 6 violations alleged here, and both filings were unsuccessful. Irrespective of what we might conclude as to the merits of the alleged Act 6 violations in the notices provided here, it would be unfair to strike the Mortgagee's claims for compensation in *successfully* defending the very same Objections in the state court.

Consequently, we believe that mortgagee's non-compliance with § 403(c) is merely a factor which must be considered in determining whether the particular demands of a mortgagee for fees and costs are reasonable. Obviously, it is not reasonable to impose upon a mortgagor expenses and costs which arise only as a direct result of the mortgagee's having initially dispatched an errant § 403(c) notice to the mortgagor. With the caveat that dispatch of an errant notice may impact on the total sum of fees and costs allowed, we therefore reject the Debtor's first alternative argument that an Act 6 violation eliminates the Mortgagee's entire claim for fees and costs.

The issue becomes pertinent here, because it is fairly obvious that the two batches of Act 6 notices sent by the Mortgagee here to the Debtor and her non-debtor spouse, on September 20, 1984, and October 18, 1985, contain, in our opinion, at least two violations of § 403(c). First, all of the notices contain the very defect which we identified as violative of § 403(c)(3) in *Mosley*, 85 B.R. at 953–54. They fail to recite the purported monthly late charge and therefore fail to disclose to the Debtor "exactly what performance including what sum of money" must be paid to cure a default at any particular point in time. Also, the sum of the figures for monthly payments and the late charges and other charges imposed does not, in either batch of letters, equal the total amount to cure the default set forth in the letters.[5] The failure of the sums listed to add up to the articulated total of payments is precisely the same defect found violative of § 403(c)(3) by Chief Judge Emeritus Joseph S. Lord, III, in *Main Line Federal Savings & Loan Ass'n v. Joyce*, 632 F.Supp. 9, 10 (E.D.Pa.1986).

However, both of these violations of Act 6, while very real, are not, in our view, so egregious that all of the Mortgagee's claims for fees and costs which arise in

---

**5.** In the September 20, 1984, letter, the sum of the monthly payments due is $1,184.00, the late charges are $475.44, and therefore the sum should be $1,759.44. However, the total of payments due is disclosed as $1,727.57. In the October 18, 1985, letter, the sum of the designat- ed monthly payments is $5,531.38, the late charges are $479.76, and the total should be $5,911.14. Instead, the total of payments is disclosed as $5,879.26. The $31.88 discrepancy common to both sets of figures is not explained.

foreclosure proceedings instituted there-after should be summarily stricken as a result. We might, of course, conclude differently if a mortgagee failed to provide any notice as required by § 403(c) at all, or committed some other egregious violation thereof. *Cf. Mosley, supra,* 85 B.R. at 951 n. 7.[6]

## F. THE MORTGAGEE IS ENTITLED TO ONLY THE COSTS OF ONE MORTGAGE FORECLOSURE FILING AND TITLE SEARCH AMONG ITS DEMANDED ITEMS OF COSTS.

■ We now proceed to evaluate the Mortgagee's pre-petition service requests in light of § 506(b) and the four-prong test enunciated in *Tashjian.* As in our discussion of this element under the topic of post-petition services, see page 896 *supra,* we conclude that the Mortgagee is over-secured.

The Mortgagee stands on much firmer ground as to the second, third, and fourth prongs of the *Tashjian* test as to at least certain elements of pre-petition costs and fees claimed than it did in asserting a right to post-petition costs and fees. The mortgage contract clearly allows "expenses of foreclosure," including reasonable attorney's fees and costs of "documentary evidence, abstracts and title reports." Some costs and fees are clearly "reasonable." Act 6, per 41 P.S. §§ 406(2), (3), allows collection of attorney's fees which are "reasonable and actually incurred."

However, all of these prongs of the *Tashjian* test converge to render certain charges uncollectible. It is patently unreasonable to impose the costs and fees of litigating two separate foreclosure actions upon the Debtor. There is no evidence of any extraordinary facts or any other bases justifying the necessity of filing two separate foreclosure actions to foreclose on one

mortgage for overlapping alleged default-periods. While we cannot be certain of the reasons for the Mortgagee's voluntary dismissal of the first action, it seems fairly clear that it was motivated by some perceived procedural weakness in that action. It does not appear fair to us to impose the charges for two actions upon the Debtor under circumstances where the Mortgagee's own shortcomings were the cause for the duplicative filings.

Since at least part of the costs and fees sought are attributable to the initial withdrawn foreclosure proceeding, and the Mortgagee fails to designate clearly to what action its elements of costs and fees are attributable, it is difficult to ascertain accurately how much of the amounts requested are in fact reasonable. Conceivably, we could conclude that, since the burden of proving the legitimacy of all amounts requested is upon the Mortgagee, it has failed to meet its burden and should be denied all of its request. *See In re Jordan,* 91 B.R. 673, 675–677 (Bankr.E.D. Pa.1988); and *In re Lewis,* 80 B.R. 39, 41 (Bankr.E.D.Pa.1987).

However, the Debtor, in her fall-back position, posits that it is probably fair to allow the Mortgagee half of the amounts requested for filing two Complaints in Foreclosure ($224.20) and two Foreclosure Searches ($312.00). We agree that one complaint and lien search was reasonably incurred by the Mortgagee. We shall therefore allow the Mortgagee the amounts of $112.10 and $161.09, respectively, for these items.

The next five entries of costs for which reimbursement is sought are (1) Entry of Judgment; (2) Praecipes and Motions fees; (3) Postage; (4) Telephone; and (5) Duplicating. We would normally consider the first two items as costs which would follow a valid judgment as of course. *See In re*

---

**6.** We cannot attach too much significance to the holding of Judge Lord in *Joyce, supra,* that Act 6 violations re "jurisdictional." If such violations really are jurisdictional, then Judge Lord would logically have had to have stricken the fees and costs which arose out of the state court proceedings were defective Act 6 notices were provided in *Werts v. Federal National Mortgage Ass'n,* 48

B.R. 980, 984–85 (E.D.Pa.1985), irrespective of the presence of a state court foreclosure judgment. *Compare In re Sharp,* 24 B.R. 817 (Bankr.E.D.Pa.1982) (state court judgment stricken where Act 6 notice was not sent to proper address of debtor, an egregious violation).

*Smith, Smith v. Kissell Co.,* 92 B.R. 127, 133 (Bankr.E.D.Pa.1988). However, here, the judgment was erroneously entered subsequent to the Debtor's bankruptcy filing and was stricken as to the Debtor by Stipulation of the parties. Therefore, it does not appear appropriate to impose the cost for the Entry of Judgment upon the Debtor. The "Praecipes and Motions fees" might be collectible if we had some conception of why they were imposed. We suspect that they may have been imposed, at least in part, in connection with the entry of the subsequently-stricken judgment. The failure of the Mortgagee to meet its burden of establishing its entitlement to this item is fatal to its request for same.

The last three items are doubtful under each of the latter three prongs of the four-prong *Tashjian* test under any circumstances. It is questionable whether the mortgage contract allows such items. They are rather far removed from costs of "documentary evidence, abstracts and title reports." They are not items of costs which we believe would follow even the valid entry of a judgment as of course, and, here, no valid judgment was entered. *Cf.* 28 U.S.C. § 1920; and L. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court,* 101 F.R.D. 553, 586–88 (1984). It is impossible to assess the reasonability of these entries, because we have been provided no detail regarding them. *See In re Metro Transportation Co.,* 78 B.R. 416, 419–20 (Bankr.E.D.Pa.1987); and *In re Mayflower Associates,* 78 B.R. 41, 47–48 (Bankr.E.D.Pa.1987) (costs for postage, telephone calls, and photocopying, in fee applications, must be explained with specificity and/or supported with receipts if they are to be allowed). Accordingly, we shall not allow them.

### G. THE MORTGAGEE IS ENTITLED TO A REASONABLE ATTORNEY'S FEE FOR PURSUING ONE FORECLOSURE PROCEEDING, WHICH WE DETERMINE IS $500.00.

The Mortgagee also requests $1,188.20 for attorney fees for efforts of its counsel in the pursuit of its two state-court mortgage foreclosure proceedings against the Debtor and her husband. This claim is certainly stronger than those for the last five elements of costs discussed in the preceding headnote. The Mortgagee's difficulties in satisfying the second, third, and fourth prongs of the *Tashjian* test are certainly diminished. Attorney's fees are expressly allowed under the parties' contract. The state law expressly allows them to be charged. However, both the contract and the state law limit imposition of mortgagees' attorney's fees in foreclosure proceedings upon mortgagors to the extent that they are *reasonable,* underscoring the significance of the third (reasonability) prong of the *Tashjian* test.

We cannot agree with the Mortgagee insofar as it seeks reimbursement of fees for services performed in connection with the first, subsequently-withdrawn foreclosure suit or for services performed in securing the ultimately-invalidated entry of the judgment in the second foreclosure suit. The Mortgagee has given us no itemization of the services performed, as has been required in fee applications submitted to this court ever since the Third Circuit Court of Appeals decision in *In re Meade Land & Development Co.,* 527 F.2d 280, 283–84 (3d Cir.1975).

However, we have been presented with the Docket Entries of the pertinent second foreclosure proceeding, which reveal that the Debtor had required the Mortgagee to follow a tortuous path to its goal of foreclosure. Two batches of Preliminary Objections were filed by the Debtor, briefed, and ultimately dismissed. An answer was filed by the Debtor and a motion for summary judgment was filed and briefed by the Mortgagee, and, since it was entered and was stricken only because of the intervening bankruptcy, apparently would have been successful but for the bankruptcy. Clearly, this was not the sort of routine, uncontested proceeding in which we would limit the Mortgagee's reimbursement of counsel fees to $200.00. *See Nickleberry, supra,* 76 B.R. at 422–23. The only other benchmark which can be derived from *Nickleberry* is that $525.00 and $400.00 are apparently the cap on fees reimbursable in

prosecution of foreclosure cases on behalf of the United States Department of Housing and Urban Development and the Veterans Administration, respectively. *Id.* at 418–19. Considering these figures, reviewing the Docket Entries, and noting that the Mortgagee has failed to present any evidence as to when or for what its claimed fees totalling $1,188.20 were performed, we shall proceed to set the allowable fees at slightly less than half the total figure, or $500.00.

## H. THIS MORTGAGEE SHALL BE ALLOWED ONLY $327.95 OF ITS DEMANDS FOR LATE CHARGES.

██ Only two entries of "Additional Charges" remain for consideration, late charges of $680.86 and "Misc. fees" of $30.00 requested as compensation for receipt of two checks from the Debtor which were returned for insufficient funds. Regarding the latter charges, the Mortgagee argues that its dispatch of a "Notice to Loan Customers" imposing such charges renders them compensable. We disagree that such a unilateral attempt to impose certain charges may substitute for providing for such charges in the parties' contract in satisfaction of the second prong of the *Tashjian* test. We shall therefore disallow this entry.

██ The last item of dispute is late charges. We have recently had occasion to consider the circumstances under which we will allow such charges in *Jordan, supra,* at 675–77. There, we reiterated our previous holding in *Lewis, supra,* 80 B.R. at 42–44, which involved, like here, an attempted imposition of late charges by a mortgagee. In both instances, emphasizing the difficulty in ascertaining how such charges are computed, we held that the burden of proving the method of computation and the actual computation of such charges pursuant to the prescribed method was squarely placed upon the creditor and, in the absence of specific evidence as to these points, an attempt to impose *any* late charges would be denied in its entirety.

Here, the parties' Stipulation of Facts presents us with raw material from which

the Mortgagee apparently contends that a calculation of the late charges is "readily discernable." Mortgagee's Memo, at 13. We beg to differ. The parties' Note provides that a late charge of four (4%) percent of the monthly mortgage installment of $234.36, or $9.37, is payable if a payment is not received by the Mortgagee by the 20th day of a given month. However, it is far from clear from inspection of the Statement of Mortgage Account what payments of the Debtor are claimed by the Mortgagee to be late. For example, it is unclear whether the date posted on the account is the same as the crucial date when the payment was received. Total payments of sums in excess of the monthly installment of $234.36 are noted. The Account has a column for recording "Late Charge or Other" as to each payment, but almost every entry has a ".00" figure in this column.

We therefore cannot ascertain what payments the Mortgagee claims are late. The Mortgagee's Memo explicates its calculations only by including a conclusory statement that 59 payments are deemed by it to be late and hence that the late charges should be $552.83. Unexplained is how the Mortgagee calculated its original Late Charges of $680.86, and what the reason is for the discrepancy. Meanwhile, as we indicated at page 894 *supra,* the Debtor urges, on an equally inscrutable basis, that the late charges should not exceed $327.95, which would be the total charges for 35 late payments. Since the Debtor concedes liability for $327.95 and obviously did not make a substantial number of payments in timely fashion, we will not deny the Mortgagee's claim for late charges in its entirety, as we did in *Jordan* and *Lewis.* Rather, we will allow such charges in the conceded amount of $327.95.

## I. MISCELLANEOUS REMAINING ISSUES/CONCLUSION

We have now addressed all of the issues pertinent to the merits of the Mortgagee's Proof of Claim. Our calculations of the allowable claim of the Mortgagee, as set forth in our Order of November 21, 1988, are as follows:

| | | |
|---|---|---|
| Principal Amount | | $23,364.04 |
| TILA recoupment | (−) | 1,000.00 |
| Filing One Foreclosure Complaint | (+) | 112.10 |
| One Judgment Search | (+) | 161.00 |
| Reasonable Attorney's Fee | (+) | 500.00 |
| Late Charges | (+) | 327.95 |
| Gross Amount of Claim | | $23,465.09 |

In its Memo, the Mortgagee "acknowledged," without hesitancy, that the Debtor's post-petition payments could be deducted from the Gross Amount of the Claim to ascertain the Proof of Claim deemed allowable at the date of confirmation. Mortgagee's Memo, at 14. The amount of payments made was stipulated, by the parties, to be $7,651.00 as of November 29, 1988. We indicated previously that we reject the Mortgagee's attempt to renege from its "acknowledgement." We therefore find that the net amount of the Mortgagee's valid claim, as of the date of confirmation, is $15,814.09. In our Order, we contemplate immediate confirmation of the Second Amended Plan, assuming that the Standing Chapter 13 Trustee has no objections thereto.

The Debtor seeks attorney's fees pursuant to both 15 U.S.C. § 1640(a)(3) of the TILA and 41 P.S. § 503 of Act 6. The Mortgagee argues that no attorney's fees are collectible "because the Debtor has incurred none." Mortgagee's Memo, at 25. If, by this statement, the Mortgagee means that the fact that the Debtor is represented by a publicly-funded legal services program eliminates any claim for attorney's fees under § 1640(a)(3), the point is not well-taken. *See, e.g., Rodriquez v. Taylor,* 569 F.2d 1231, 1244–49 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed. 2d 414 (1978); *Manning v. Princeton Consumer Discount Co.,* 533 F.2d 102, 107 (3d Cir.1976), *cert. denied,* 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1977); and *In re Szostek,* 93 B.R. 399, 409 (Bankr.E.D.Pa. 1988). On the other hand, we did not accept the Debtor's argument that the Mortgagee's violations of 41 P.S. § 403(c) barred its entire claim for costs and fees, and hence Act 6 has no bearing on our striking of certain demands in the Mort-gagee's Proof of Claim, thereby eliminating any claim for attorney's fees based upon 41 P.S. § 503. The Debtor shall therefore be restricted to her rather modest, pre-trial expenditures directly related to her TILA claim, which were settled by the Mortgagee's acknowledgement of liability prior to August 16, 1988.

We shall issue a new Order, amending our previous Order of November 21, 1988, in the adversary proceedings and paving the way for the long-awaited confirmation of the Debtor's presently-proposed Plan.

### ORDER

AND NOW, this 8th day of December, upon consideration of the Stipulation of Facts and Briefs submitted by Counsel for the parties pursuant to our Order of October 11, 1988; the Debtor's Motion to Reconsider our Order of November 21, 1988; and all of the developments at the hearings to consider this adversary proceeding and Confirmation and the Trustee' Motion to Dismiss on November 22, 1988, and November 29, 1988, it is hereby ORDERED AND DECREED as follows:

1. Our Order of November 21, 1988, is VACATED and replaced with the instant Order.

2. Judgment is entered in favor of the Plaintiff, ELAINE VITELLI a/k/a ELAINE MOTHES, and against the Defendant, CHELTENHAM FEDERAL SAVINGS AND LOAN ASSOCIATION, in part.

3. The Defendant is entitled to a valid secured claim in the amount of $15,814.09.

4. The parties are directed to confer to resolve the issue of attorney's fees and costs due to the Debtor's counsel, which shall be awarded only for successful litigation of the Debtor's Truth–in–Lending Act recoupment claim, but, if they are unable to do so, and counsel has made a reasonable demand, the Debtor's counsel is accorded an opportunity to file a Motion requesting attorney's fees and costs, including compensation on the fee application if such is necessary, per 15 U.S.C. § 1640(a)(3), same is to be filed within thirty (30) days hereafter and to be procedural-

ly in conformity with *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates*, 78 B.R. 41 (Bankr.E.D.Pa.1987).

5. If the Chapter 13 Trustee does not oppose the confirmation of the said Plan in light of the contents of this Order, he shall forthwith execute his Report recommending same, and, upon receipt of same, we will enter an Order approving same and an Order confirming the said Plan.