In re Gary TAVELLA, Debtor.

Gary TAVELLA, Plaintiff,

v.

GOLDEN NATIONAL MORTGAGE COMPANY, Defendant.

Bankruptcy No. 94–17995SR.
Adv. No. 95–170.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 5, 1996.

Gregory R. Noonan, DeYoung, Walfish & Noonan, P.C., King of Prussia, PA, for Debtor.

Joan P. Brodsky, Leslie Puida, Federman and Phelan, Philadelphia, PA, for Golden National Mortgage Company.

Frederick R. Reigle, Chapter 13 Trustee, Reading, PA.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

Before the Court is the Debtor's Complaint against Defendant Golden National Mortgage Company. The Debtor is seeking to reduce the mortgage interest rate on post-petition payments over the sixty months of his proposed Chapter 13 plan. Golden National opposes the proposed interest rate reduction. The Court acceded to the parties' request that it resolve this dispute based upon consideration of the parties' Memoranda of Law. For the reasons which follow, the Court will deny the relief sought by the Debtor.

**1.** The Court notes that the Debtor filed three additional adversary complaints against Defendant Golden National Mortgage, Adversary numbers 95–0161, 95–0167, 95–0168, seeking identical relief with respect to three mortgages and notes granted by the Debtor to Golden National against other properties. For reasons not rele-

### Background

The Debtor filed the underlying Chapter 13 bankruptcy case on December 5, 1994. On or about March 15, 1995, the Debtor filed the instant adversary proceeding.[1] Defendant Golden National holds notes and mortgages on four properties located at 1327 South 2nd Street, Philadelphia, Pennsylvania, 1329 South 2nd Street, Philadelphia, Pennsylvania, 312 North Suffolk Avenue, Philadelphia, Pennsylvania, and 1536 South 2nd Street, Philadelphia, Pennsylvania. The Debtor seeks to modify the interest rate on the mortgage and note against each property by reducing the rates from 10.5%, 10.75%, 10.5% and 10.625%, respectively, to 8%, on the post-petition payment for each of the four loans over the 60 months of the Debtor's proposed Chapter 13 Plan.

Golden National filed arrearage proofs of claim for each of the properties, which state the following, as of the date of the bankruptcy filing:

| | Arrearages | Total Debt |
|---|---|---|
| 1536 South 2nd Street | $5,412.28 | $88,352.10 |
| 1329 South 2nd Street | 3,265.87 | 72,326.53 |
| 312 North Suffolk Avenue | 3,149.41 | 68,561.11 |
| 1327 South 2nd Street | 3,484.68 | 85,126.22 |
| [Total Claimed Arrearages] | [$15,312.24] | |

To date, the Debtor has not filed an Objection to, or otherwise disputed the amounts set forth in, Golden National's Proofs of Claim. His amended Chapter 13 Plan dated October 31, 1995, provides, in relevant part:

1. The future earnings of the debtor are submitted to the supervision and control of the trustee and the debtor shall pay to the trustee the sum of $822.63 monthly for a period of 10 months.

2. From the payment so received in (1) above, the trustee shall make disbursements as follows:

. . . .

(c) Holders of allowed secured claims shall retain the liens securing such claims and shall be paid as follows:

vant here, all four adversary proceedings were closed. However, on August 21, 1995, the Court approved the parties' stipulation to reopen the instant adversary proceeding and to resolve the legal issue presented by all four adversary complaints in the context of this adversary proceeding.

(2) Golden National, $283.86 per month to be paid over 10 months. This is the total to be paid on mortgages for four properties, namely, 1327 South 2nd Street, Philadelphia, Pennsylvania, 1329 South 2nd Street, Philadelphia, Pennsylvania, 312 North Suffolk Avenue, Philadelphia, Pennsylvania, and 1536 South 2nd Street, Philadelphia, Pennsylvania.

3. During the 11th through the 60th month, the future earnings of the debtor are submitted to the supervision and control of the trustee and the debtor shall pay to the trustee the sum of $896.18 monthly for a period of 50 months.

4. From the payment so received in (1) above, the trustee shall make disbursements as follows:

. . . .

(c) Holders of allowed secured claims shall retain the liens securing such claims and shall be paid as follows:

. . . .

(2) Golden National, $249.47 per month to be paid over 50 months. This is the total to be paid on mortgages for four properties, namely, 1327 South 2nd Street, Philadelphia, Pennsylvania, 1329 South 2nd Street, Philadelphia, Pennsylvania, 312 North Suffolk Avenue, Philadelphia, Pennsylvania, and 1536 South 2nd Street, Philadelphia, Pennsylvania.[2]

5. All post-petition payments to holders of allowed secured claims shall be paid outside the plan, at the following rate for the following period:

| Allowed Secured Claims | Rate | Term |
|---|---|---|
| Golden National—all mortgages | 8% | 60 months |

The Debtor proposes that the interest rate on each of the four notes and mortgages shall revert back to their respective contract rate for all mortgage payments due subsequent to the completion of the Debtor's payments under the Plan.

As a threshold matter, the Debtor argues that his proposed Plan may modify Golden National's secured claims pursuant to 11 U.S.C. § 1322(b)(2), because (1) Golden National has an additional security interest in the rents and profits of the mortgaged properties, and (2) the Debtor's principal residence is not located within the four mortgaged properties. According to the Debtor, his proposed Plan also satisfies all of the requirements of 11 U.S.C. § 1325, apparently because it provides for payment of the present value of Golden National's total claimed arrearages over the 60 months proposed plan period. The Debtor is, in effect, arguing that because his proposed "cure" of the outstanding arrearages owed to Golden National comports with the provisions of 11 U.S.C. § 1325(a)(5)(B)(ii), and because a Chapter 13 plan may modify the rights of certain holders of secured claims pursuant to § 1322(b)(2), his proposed Chapter 13 Plan should be confirmed.

Golden National, in turn, does not at this juncture dispute that its mortgages are subject to modification pursuant to § 11 U.S.C. § 1322(b)(2), but rather argues that the Debtor cannot "cram down" the interest rate on his mortgage payments and also cure his outstanding arrearages during the life of his proposed Chapter 13 Plan pursuant to 11 U.S.C. § 1322(b)(2). Rather, and in the latter respect, Golden National argues that the Debtor must comply with the provisions of 11 U.S.C. § 1322(b)(5) if the Debtor proposes to "cure" his arrearages over the 60 month proposed Plan period, and that in this regard the Bankruptcy Code requires the tender of post-petition payments to Golden National made "outside the Plan" to be at the contract rate of interest. Golden National also notes that the Debtor has not sought to bifurcate its claims, nor does the Debtor propose to pay the present value of those secured claims in full over the life of the proposed Plan. For these reasons, Golden National contends that the Court should deny the relief sought

**2.** Pursuant to ¶¶ 2(c)(2) and (4)(c)(2), the Debtor's proposed Plan provides for a "cure" of total arrearages claimed by Golden National (proposed total payments of $15,312.10 against the $15,312.24 arrearages claimed by Golden National) over the 60 month period of the Debtor's proposed Plan.

by the Debtor, whose Plan, in turn, cannot not be confirmed.

## Discussion

As noted, Golden National does not at this juncture dispute that its mortgages are subject to modification pursuant to § 11 U.S.C. § 1322(b)(2).[3] The parties' dispute is solely limited to the issue of whether the proposed mortgage interest rate reduction during the life of the Debtor's Plan renders his Plan non-confirmable. In order to resolve this dispute, it is necessary to consider the two recognized ways in which a debtor can utilize a Chapter 13 plan to alter the rights of a secured creditor not secured by the debtor's principal residence. Two Bankruptcy Code sections come into play, 11 U.S.C. §§ 1322(b)(5) and 1325(a)(5).

■ Since the Debtor maintains that his proposed Chapter 13 Plan satisfies all of the requirements of § 1325(a)(5), and that § 1322(b)(5) does not apply, the Court will discuss the requirements of § 1325(a)(5) first. It provides, in relevant part:

**11 U.S.C. § 1325. Confirmation of plan**

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . .

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

■ If a secured claim holder declines to accept a debtor's proposed treatment under the plan, the debtor can force acceptance through a "cramdown" under § 1325(a)(5)(B). *Appeal of Capps,* 836 F.2d at 776. Cram-

down necessarily involves a modification of the secured creditor's rights with regard to such factors as number of payments and rate of interest. *Id.* In the cramdown scenario, a Chapter 13 plan must provide that the secured creditor receive the present value of his secured claim within the life of the plan, or else an objection to confirmation must be sustained. *Id.; accord, Landmark Financial Services v. Hall,* 918 F.2d 1150, 1153–54 (4th Cir.1990); *In re Bender,* 86 B.R. 809 (Bankr.E.D.Pa.1988).

■ In the instant case, the Debtor maintains that his proposed Plan complies with the provision of § 1325(a)(5). While the proposed Plan provides that Golden National will retain the liens securing its claims as § 1325(a)(5)(B)(i) requires, the Plan also provides for payment of the Debtor's arrearages to Golden National over the 60 month proposed plan period and payment of Golden National's secured claim "outside" the Plan over a period extending beyond 60 months. The problem with the Debtor's Plan is that § 1325(a)(5)(B)(ii) requires that a Chapter 13 plan provide for payment to the secured creditor of the present value of his entire secured claim within the life of the plan, not just the payment of any outstanding arrearages owed to the secured creditor within the life of the plan. *In re Vitelli,* 93 B.R. 889, 894 (Bankr.E.D.Pa.1988). Accordingly, the Debtor's proposed Chapter 13 Plan cannot be confirmed over Golden National's objection pursuant to § 1325(a)(5). It also necessarily follows that the relief sought by the Debtor in the form of a reduction in the mortgage interest rate on the Debtor's post-petition payments over the sixty months of his proposed Plan must be denied.

It does not follow necessarily, however, that the interest rate reduction sought by the Debtor would be denied if he were to file an amended plan. Since Golden National does not at this juncture dispute that its mortgages are subject to modification, the Debtor presumably could propose a Chapter 13 Plan which would satisfy the requirements of

---

**3.** Section 1322(b)(2) provides that a plan may: modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's*

*principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. (emphasis added).

§ 1325(a)(5), and at the same time provide for a reduced rate of interest on payments against Golden National's secured claims. Once again, the Court notes, however, that an amended plan must necessarily provide for payment of the present value of Golden National's entire secured claim within the life of the plan to qualify for confirmation under § 1325(a)(5).

█ The second Code section available to a Chapter 13 debtor to alter the rights of secured claim holders is § 1322(b)(5). Section 1322(b)(5) allows debtors to cure a default through a Chapter 13 plan without the consent of their secured creditors, even though a right to cure may not exist outside of bankruptcy. Section 1322(b)(5) provides, in relevant part:

**11 U.S.C. § 1322. Contents of Plan**

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.[4]

█ Under § 1322(b)(5), all of the provisions of a note or contract remain in full force and effect. "Section 1322(b)(5) requires a debtor who opts to utilize a Chapter 13 plan to cure arrearages on claims on which 'the last payment is due after the date on which the final payment under the plan is

due,' to effect the cure of the default 'within a reasonable time,' and to abide with the 'maintenance of payments' while the case is pending." *In re Cole,* 122 B.R. 943, 949 (Bankr. E.D.Pa.1991); *see also, Landmark Financial Services v. Hall,* 918 F.2d 1150, 1154 (4th Cir.1990); *In re Scott,* 121 B.R. 605 (Bankr. E.D.Okl.1990); *In re Hayes,* 111 B.R. 924 (Bankr.D.Or.1990). A change in the monthly payments does not constitute the "maintenance of payments" for these purposes. *In re McGregor,* 172 B.R. 718, 721 (Bankr. D.Mass.1994); *see also, Appeal of Capps,* 836 F.2d 773, 777 (3d Cir.1987) ("Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts.").

In the instant case, the proposed reduction of the mortgage rate of interest constitutes an impermissible change in monthly payments. Therefore, the Debtor's proposed Plan does not satisfy the requirements of § 1322(b)(5).

**Conclusion**

In summary, the Court believes that the Debtor has two available options under Chapter 13 for the treatment of Golden National's secured claims. First, the Debtor can include the total present value of Golden National's secured claims in the Plan and pay it in full within the life of the Plan in accordance with § 1325(a)(5)(B). Second, the Debtor can reinstate the original notes and mortgages contracts by resuming payments under the terms of the original notes and mortgages while curing the arrearages with appropriate payments within the life of the

4. Golden National's principal argument against the relief sought by the Debtor is that the Debtor must comply with the provisions of § 1322(b)(5) in order to propose a "cure" plan which can be confirmed. Relying on *In re Simpkins,* 16 B.R. 956, 963 (Bankr.E.D.Tenn.1982) (Judge Ralph H. Kelley) ("The authority given by § 1322(b)(5) amounts to specific authority for dealing with claims secured only by the debtor's principal residence. . . ."), the Debtor argues, in turn, that § 1322(b)(5) is not applicable because Golden National's mortgages are not secured by his personal residence. As he has done throughout his Memoranda of Law, the Debtor's argument is based upon a single quote taken out of context. After considering the above quote in context, the Court believes that Judge Kelley's statement

stands for the proposition that § 1322(b)(5) amounts to specific authority for dealing with a secured claim through a Chapter 13 plan, even if the claim is secured by a debtor's personal residence and therefore cannot be modified pursuant to § 1322(b)(2). The plain language of § 1322(b)(5) provides that it is applicable in the context of any (unsecured claim or) secured claim on which the last payment is due after the date on which the final payment under the plan is due. *Appeal of Capps,* 836 F.2d at 774; *see also,* Keith M. Lundin, *Chapter 13 Bankruptcy,* § 4.45, at 4–95 (Wiley 1994). Since the last payment on Golden National's mortgages are due after the date on which the final payment is due under the Debtor's proposed Plan, his argument is patently flawed and must be rejected.

Plan as provided in § 1322(b)(5). Since the Debtor does not propose to exercise either of these options, the Debtor's proposed Chapter 13 Plan cannot be confirmed over Golden National's objection.[5]

Because of the age of this case, the Court will require the Debtor to file and serve a confirmable plan on or before March 1, 1996. An Order consistent with the foregoing conclusions accompanies this Opinion.

### ORDER

*AND NOW,* this 5th day of February, 1996, for the reasons more fully set forth in the accompanying Opinion, it is hereby:

*ORDERED* that the mortgage interest rate reduction sought by the Debtor shall be and hereby is Denied; and it is further:

*ORDERED* proposed Chapter 13 Plan does not satisfy the requirements of 11 U.S.C. §§ 1301 *et seq.,* and accordingly cannot be confirmed; and it further:

*ORDERED* that the Debtor shall file and serve a confirmable Chapter 13 Plan on or before March 1, 1996, or suffer dismissal of this case.

---

**5.** As Golden National has acknowledged, the Debtor has the option of attempting to "bifurcate" Golden National's claims, although he has not attempted to do so to date. Bifurcation is the process of defining a secured claim by reference to the value of the collateral and may be accomplished through the provisions of 11 U.S.C. § 506(a). Section 506(a) provides in relevant part that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent the value of such creditor's interest ... is less than the amount of such allowed claim.

In other words, the amount of a secured claim is the lesser amount of the value of the collateral or the amount of the debt. *In re Simpkins,* 16 B.R. at 964.

In the instant case, the Debtor's proposed Chapter 13 Plan provides for payment of total amount due on each of the four notes and mortgages as well as the total arrearages (with interest) claimed by Golden National. If the Debtor attempted to and was successful in reducing Golden National's secured claims through bifurcation, he could then use § 1322(b)(5) to propose to cure defaults and maintain payments with respect to the *smaller* allowed secured claims. *In re Murphy,* 175 B.R. 134, 138 (Bankr.D.Mass. 1994).

Since, the Debtor has not yet commenced a "bifurcation" proceeding, the Court will not address the numerous and complex issues which the Debtor could subsequently face in attempting to utilize § 1322(b)(5) to propose a confirmable plan. *See, e.g.,* Matter of Arvelo, 176 B.R. 349 (Bankr.D.N.J.1995).